# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | Case Number: 4:93-CR-22 |
| v. | § | Judge Mazzant |
| | § | |
| WILLIAM SAMUEL MCLEAN, JR. | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | Case Number: 4:93-CR-47 |
| v. | § | Judge Mazzant |
| | § | |
| WILLIAM SAMUEL MCLEAN, JR. | § | |

## MEMORANDUM OPINION & ORDER

Defendant William McLean, Jr. filed the following:

(1) Defendant's Supplemental Emergency Motion to *Pro Se* Defendant's 7-19-22 Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #155; No. 4:93-cr-47, Dkt. #134);

(2) Defendant's Emergency Motion to Reconsider Pursuant to Rule Fed. Civ. P. 59(e) to the Courts [sic] Order in (DOC. #154) (No. 4:93-cr-22, Dkt. #156; No. 4:93-cr-47, Dkt. #135);

(3) Emergency Motion to have (DOC. #133) Case No.: 4:93-CR-47-1 and (Doc. #154) Case No.: 4:93-CR-22-1 Reheard by the Court as 30 Days Elapsed from 7-18-2022 With No Response from the Warden As Well As the 8-10-2022 Supplemental Motion Be Heard (No. 4:93-cr-22, Dkt. #158; No. 4:93-cr-47, Dkt. #137);

(4) Defendant's Emergency Motion to Inform the Court of Further Delay in Medical Treatment and to Ask for the RIS to be Granted Forthwith (No. 4:93-cr-22, Dkt.

#159; No. 4:93-cr-47, Dkt. #138);

(5)   Defendant's Motion to Proceed In Forma Pauperis in the Appeal in the 5th Cir. Court of Appeals in Case No. 22-40443 (No. 4:93-cr-22, Dkt. #160; No. 4:93-cr-47, Dkt. #139);

(6)   Defendant's Motion to Expediate R.I.S. Reconsideration Due to Continued Delay in Deadly Melanoma Treatment (No. 4:93-cr-22, Dkt. #161; No. 4:93-cr-47, Dkt. #140)

(7)   Defendant's Emergency Motion to Rehear the (2) Previous Motions for R.I.S. Due to Life Threatening Melonoma [sic] Cancer and the B.O.P. Inability to Swiftly Treat my "Known" Medical Needs and 100% Proof of Exhaustion, i.e.: 30 Days No Response (No. 4:93-cr-22, Dkt. #162; No. 4:93-cr-47, Dkt. #141);

(8)   Defendant's Emergency Motion to have all Pending Motions Ruled on by this Court Due to "Deadly Malignant Melonoma [sic] Cancer" and Failure to Timely Treat Said Cancer by the U.S.A./B.O.P. (OR) in the Alterative Motion for a Hearing on all Pending Motions Before the Court as the Issues Before the Court are in Fact Life or Death Issues, of the Pro Se Defendant Whom "If" Sentenced Today for the Same Crimes Committed in 1992-93 Could "Not" Receive a Longe [sic] Sentence Then [sic] the 30 Years He has All Ready Server [sic] Flat (No. 4:93-cr-22, Dkt. #163; No. 4:93-cr-47, Dkt. #142);

(9)   Defendant's Emergency Follow Up Motion to My 10-3-22 Emergency Motion to Have all Pending Motions Heard, and Reduction in Sentence Granted to Save My Life (No. 4:93-cr-22, Dkt. #164; No. 4:93-cr-47, Dkt. #143);

(10)   Defendant's Emergency Status Follow Up Motion to R.I.S. Request i.e. "Emergency

Motion….” to Inform the Honorable Judge Amos L. Mazzant IIII by Attached Letter that Once Again the BOP has Dropped the “Medical-Ball” on My Life Saving Cancer Surgury [sic]; After the 10-17-22 Cancellation of My Life Saving Melonoma [sic] Cancer Surgury [sic] Due to a Simple “Missing Signuer [sic]” (No. 4:93-cr-22, Dkt. #166; No. 4:93-cr-47, Dkt. #145);

(11)  Defendant’s Emergency Motion Giving Notice; that Life Saving Deadly Malignant Melonoma [sic] Cancer Surgury [sic] was Cancelled on 10-17-22 by the BOP/USA Due to a “Paper Work Issue” AND Emergency Motion to Heare [sic] all Pending Outstanding Motions Before the Court Related to R.I.S. so that I may Seek Life Saving Surgury [sic]/Medical Treatment on My Owne [sic] to Save My Life (No. 4:93-cr-22, Dkt. #167; No. 4:93-cr-47, Dkt. #146);

(12)  Defendant’s Emergency Motion with a 8 Page “Affidavid [sic] of Facts” to Support Pending R.I.S. Related Motions as the BOP Continues to be Unable to Treat Me, Even After Surgury [sic], as I Still Have Un-Checked Melomona [sic] Suspected 930 Spots and NO Heart-Cath Test, as well as Sleeping on the Floor and Facing On Going Retaliation by the B.O.P. (No. 4:93-cr-22, Dkt. #169; 4:93-cr-47, Dkt. #147); and

(13)  Defendant’s Emergency Motion by Way of (6) Page Letter to Judge Amos L. Mazzant to Inform him I am “Sick” with Infection Due to the BOP Inability to Care and Manage the After Cair [sic] of my Deadly Maligant [sic] Melanoma Sugury [sic] and Plea to Grant my R.I.S. so that I Seak [sic] Life Saving Treatment (No. 4:93-cr-22, Dkt. #170; 4:93-cr-47, Dkt. #150).

The Court, having considered the motions, the record, and the applicable law, finds that the motions to reconsider, reduce sentence, and follow up must be **GRANTED in part** and

**DENIED in part**.  However, Defendant's Motion to Proceed In Forma Pauperis in the Appeal in the 5th Cir. Court of Appeals in Case No. 22-40443 (Dkt. #160) is **GRANTED.**

## BACKGROUND

On July 15, 1993, Defendant William Samuel McLean pleaded guilty to two counts of using and carrying a firearm during and in relation to crimes of violence—interference of commerce by robbery with threats or violence under 18 U.S.C. § 1951(a) ("Hobbs Act")—in violation of 21 U.S.C. § 924(c) in the Eastern District of Texas (No. 4:93-cr-22, Dkt. #36).  On October 29, 1993, Defendant was sentenced to sixty months imprisonment for one of the counts and 240 months imprisonment for the other count, to be served consecutively for a total of twenty-five years.

On August 19, 1993, Defendant pleaded guilty to four counts of interference of commerce by robbery with threats or violence in violation of the Hobbs Act in the Northern District of Texas (No. 4:93-cr-47, Dkt. #4).  The Court sentenced Defendant to 235 months imprisonment, to be served concurrently with each other and consecutively to the sentence he received in the Eastern District of Texas.  Defendant is serving his sentence at Cumberland FCI with an anticipated release date of May 25, 2031.  *See* https://www.bop.gov/inmateloc/ (Register Number: 04259-078).

On April 26, 2018, McLean filed a motion seeking release in both of his criminal cases based on the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (No. 4:93-cr-22, Dkt. #62; No. 4:93-cr-47, Dkt. #54).  The Government opposed the motions (No. 4:93-cr-22, Dkt. #63; No. 4:93-cr-47, Dkt. #55).  The Court denied McLean's motions (No. 4:93-cr-22, Dkt. #64; No. 4:93-cr-47, Dkt. #56).

On September 14, 2020, Defendant requested compassionate release, relying in part on the ongoing COVID-19 pandemic, and also pointing to the First Step Act's amendment to 18 U.S.C.

§ 924(c) (No. 4:93-cr-22, Dkt. #92; No. 4:93-cr-47, Dkt. #78).   The Government opposed the motions (No. 4:93-cr-22, Dkt. #98; No. 4:93-cr-47, Dkt. #82).   On December 11, 2020, the Court denied the motions for lack of jurisdiction (the "December 11 Orders") (No. 4:93-cr-22, Dkt. #108; No. 4:93-cr-47, Dkt. #113).   In both instances, the Court determined Defendant failed to meet § 3582(c)(1)(A)'s exhaustion requirement because his request to the warden for early release did not include a viable release plan.

Defendant appealed the December 11 Orders to the Fifth Circuit Court of Appeals and filed a motion requesting appointment of counsel (No. 4:93-cr-22, Dkt. #113; No. 4:93-cr-47, Dkt. #111).   The Fifth Circuit denied the motion for counsel (No. 4:93-cr-22, Dkt. #132; No. 4:93-cr-47, Dkt. #113).   As for the compassionate release, the Fifth Circuit stated that because the Government did not raise exhaustion as a basis for denying relief, the Court abused its discretion in denying Defendant's request on that basis (No. 4:93-cr-22, Dkt. #139; No. 4:93-cr-47, Dkt. #54).   Accordingly, the Fifth Circuit vacated the Court's December 11 Orders and remanded for further proceedings.   Defendant raised the same arguments in his later-filed motions discussed below (No. 4:93-cr-47, Dkt. #78; No. 4:93-cr-22, Dkt. #92); therefore, the Court addressed the merits of Defendant's successfully appealed December 11 Orders when it addressed Defendant's arguments in his later-filed motions.

On June 17, 2021, Defendant again moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (No. 4:93-cr-22, Dkt. #137, No. 4:93-cr-47, Dkt. #117). On October 25, 2021, Defendant filed a Motion Ex Parte for U.S. Judge Amos L. Mazzant, urging the Court to resolve his motions for compassionate release (No. 4:93-cr-22, Dkt. #138; No. 4:93-cr-47, Dkt. #118).   On February 17, 2021, Defendant filed motions asking the Court to take judicial notice of the Fifth Circuit's decision (No. 4:93-cr-22, Dkt. #140; No. 4:93-cr-47, Dkt. #120).   On February 28, 2022,

Defendant again filed a motion for compassionate release (No. 4:93-cr-22, Dkt. #142 No. 4:93-cr-47, Dkt. #122).   The Government did not respond.   On March 18, 2022, the Court denied Defendant's Motions for Immediate Release for Extraordinary and Compelling Circumstances (No. 4:93-cr-22, Dkt. #142 No. 4:93-cr-47, Dkt. #122) and Defendant's Motions to Reduce Sentence Pursuant to 3582(c)(1) (No. 4:93-cr-22, Dkt. #137; No. 4:93-cr-47, Dkt. #117) because Defendant failed to meet the controlling requirements for compassionate release (No. 4:93-cr-22, Dkt. #143; No. 4:93-cr-47, Dkt. #123).   The other two motions were denied as moot (No. 4:93-cr-22, Dkt. #143; No. 4:93-cr-47, Dkt. #123).

On June 27, 2022, the Court considered Defendant's Motions for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e) (No. 4:93-cr-22, Dkt. #145; No. 4:93-cr-47, Dkt. #125); Defendant's Motions to Have the United States Attorney's Office File a Fed. R. of Crim. P. Rule 48(a) to Remove the 2nd 924(c) in the Interest of Justice or to Show Cause Why It Should Not File Such a Motion (No. 4:93-cr-22, Dkt. #146, No. 4:93-cr-47, Dkt. #126); Defendant's Motions to Take Notice of the Serving of, Writ of Mandamus and Mandamus to Compel Recusal (No. 4:93-cr-22, Dkt. #147; No. 4:93-cr-47, Dkt. #127); Defendant's Motions to Supplement (No. 4:93-cr-22, Dkt. #148; No. 4:93-cr-47, Dkt. #128); and Defendant's Motions for Reconsideration (No. 4:93-cr-22, Dkt. #150; No. 4:93-cr-47, Dkt. #129).   The Court determined that the motions to reconsider should be granted in part and denied in part (No. 4:93-cr-22, Dkt. #151; No. 4:93-cr-47, Dkt. #130).   The Court granted the motions to reconsider so it could conduct an analysis on the 18 U.S.C. § 3553(a) factors (No. 4:93-cr-22, Dkt. #151 at pp. 18–20; No. 4:93-cr-47, Dkt. #130 at pp. 18–20).   When the Court conducted the analysis, it determined that the sentencing factors did not weigh in favor of a reduced sentenced (No. 4:93-cr-22, Dkt. #151 at p. 20; No. 4:93-cr-47, Dkt. #130 at p. 20).   The Court granted the motions to supplement and denied all remaining

motions (No. 4:93-cr-22, Dkt. #151; No. 4:93-cr-47, Dkt. #130).

On August 2, 2022, Defendant filed a *Pro Se* Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #153; No. 4:93-cr-47, Dkt. #132).   In this first motion, Defendant argues that his diagnosis of a malignant melanoma, in combination with his other medical diagnoses, his original sentence stacking under 18 U.S.C. § 924(c), and the conditions of his imprisonment, create extraordinary and compelling reasons for the Court to reduce his sentence.   On August 9, 2022, the Court entered an order denying Defendant's *Pro Se* Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #153; No. 4:93-cr-47, Dkt. #132) because he had not exhausted all administrative remedies (No. 4:93-cr-22, Dkt. #154; No. 4:93-cr-47, Dkt. #132).   On August 10, 2022, Defendant filed a Supplemental Emergency Motion to *Pro Se* Defendant's 7-19-22 Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #155; No. 4:93-cr-47, Dkt. #134).   In this second motion, Defendant re-asserts his request that the Court reduce his sentence due to his diagnosis of melanoma (No. 4:93-cr-22, Dkt. #155; No. 4:93-cr-47, Dkt. #134).   The Government did not respond to either motion filed by Defendant.

Since August 10, 2022, Defendant filed a number of motions: Emergency Motion to Reconsider Pursuant to Rule Fed. Civ. P. 59(e) to the Courts [sic] Order in (DOC. #154) (No. 4:93-cr-22, Dkt. #156; No. 4:93-cr-47, Dkt. #135); Emergency Motion to have (DOC. #133) Case No.: 4:93-CR-47-1 and (Doc. #154) Case No.: 4:93-CR-22-1 Reheard by the Court as 30 Days Elapsed from 7-18-2022 With No Response from the Warden As Well As the 8-10-2022 Supplemental Motion Be Heard (No. 4:93-cr-22, Dkt. #158; No. 4:93-cr-47, Dkt. #137); Emergency Motion to Inform the Court of Further Delay in Medical Treatment and to Ask for the RIS to be Granted

Forthwith (No. 4:93-cr-22, Dkt. #159; No. 4:93-cr-47, Dkt. #138); Motion to Expediate R.I.S. Reconsideration Due to Continued Delay in Deadly Melanoma Treatment (No. 4:93-cr-22, Dkt. #161; No. 4:93-cr-47, Dkt. #140); Emergency Motion to Rehear the (2) Previous Motions for R.I.S. Due to Life Threatening Melonoma [sic] Cancer and the B.O.P. Inability to Swiftly Treat my "Known" Medical Needs and 100% Proof of Exhaustion, i.e.: 30 Days No Response (No. 4:93-cr-22, Dkt. #162; No. 4:93-cr-47, Dkt. #141); Emergency Motion to have all Pending Motions Ruled on by this Court Due to "Deadly Malignant Melonoma [sic] Cancer" and Failure to Timely Treat Said Cancer by the U.S.A./B.O.P. (OR) in the Alterative Motion for a Hearing on all Pending Motions Before the Court as the Issues Before the Court are in Fact Life or Death Issues, of the Pro Se Defendant Whom "If" Sentenced Today for the Same Crimes Committed in 1992-93 Could "Not" Receive a Longe [sic] Sentence Then [sic] the 30 Years He has All Ready Server [sic] Flat (No. 4:93-cr-22, Dkt. #163; No. 4:93-cr-47, Dkt. #142); Emergency Follow Up Motion to My 10-3-22 Emergency Motion to Have all Pending Motions Heard, and Reduction in Sentence Granted to Save My Life (No. 4:93-cr-22, Dkt. #164; No. 4:93-cr-47, Dkt. #143); Emergency Status Follow Up Motion to R.I.S. Request i.e. "Emergency Motion…." to Inform the Honorable Judge Amos L. Mazzant IIII by Attached Letter that Once Again the BOP has Dropped the "Medical-Ball" on My Life Saving Cancer Surgury [sic]; After the 10-17-22 Cancellation of My Life Saving Melonoma [sic] Cancer Surgury [sic] Due to a Simple "Missing Signuer [sic]" (No. 4:93-cr-22, Dkt. #166; No. 4:93-cr-47, Dkt. #145); Emergency Motion Giving Notice; that Life Saving Deadly Malignant Melonoma [sic] Cancer Surgury [sic] was Cancelled on 10-17-22 by the BOP/USA Due to a "Paper Work Issue" AND Emergency Motion to Heare [sic] all Pending Outstanding Motions Before the Court Related to R.I.S. so that I may Seek Life Saving Surgury [sic]/Medical Treatment on My Owne [sic] to Save My Life (No. 4:93-cr-22, Dkt. #167; No. 4:93-cr-47, Dkt. #146); and

Defendant's Emergency Motion with a 8 Page "Affidavid [sic] of Facts" to Support Pending R.I.S. Related Motions as the BOP Continues to be Unable to Treat Me, Even After Surgury [sic], as I Still Have Un-Checked Melomona [sic] Suspected 930 Spots and NO Heart-Cath Test, as well as Sleeping on the Floor and Facing On Going Retaliation by the B.O.P. No. 4:93-cr-22, Dkt. #169; 4:93-cr-47, Dkt. 147).  Essentially, these motions update the Court on Defendant's condition and further request the Court grant Defendant's request for a reduction in his sentence.  Additionally, the Defendant filed a Motion to Proceed In Forma Pauperis in the Appeal in the 5th Cir. Court of Appeals in Case No. 22-40443 (No. 4:93-cr-22, Dkt. #160; No. 4:93-cr-47, Dkt. #139).  The Government has not responded to any of these motions.

## LEGAL STANDARD

### I.      18 U.S.C. § 3582(C)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984.  Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following condition: (1) extraordinary and compelling reasons warranted a sentence reduction, (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission, and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a).  *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021).

Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)).  Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13.  In application note 1 to § 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).  U.S.S.G. § 1B1.13 cmt. n.1.  The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant;[1] (3) issues arising from the defendant's family circumstances;[2] and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case.  *Id.*  And because § 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to § 994(t), the policy statements contained in § 1B1.13 were binding on district courts considering § 3582(c)(1)(A)(i) motions.  *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's

---

[1] Specifically, a defendant, who is at least 65 years old, who "is experiencing a serious deterioration in physical or mental health because of the aging process" and also "has served at least 10 years or 75 percent of his or her term of imprisonment" may meet the requirement that "extraordinary and compelling reasons" exist.  U.S.S.G. § 1B1.13, n.1(B).

[2] Such family circumstances exist where: (1) a defendant has minor children whose caregiver dies or becomes incapacitated; or (2) "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13, n.1(C).

policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended § 3582(c)(1)(A) with the passage of the First Step Act.  The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92.  This was the First Step Act's only change to the compassionate-release framework.  *Id.* at 391.  Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, § 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same.  *See id*. at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under § 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions.  The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to § 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to § 3582(c)(1)(A) motions filed by prisoners.  993 F.3d at 392.[3] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a § 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a § 3582(c)(1)(A) motion is filed by a prisoner himself.  *See id.* ("[T]he policy

---

[3] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners.  *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020).  *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all § 3582(c)(1)(A) motions).

statement continues to govern where it says it governs—on the motion of the Director of the [BOP].  But it does not govern here—on the newly authorized motion of a prisoner."  (internal quotations omitted)).  Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under § 3582(c)(1)(A)(i).

## II.     Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant.  Courts should still look to the policy statement for guidance in determining what constitutes "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the [U.S.S.G.] § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").  Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same.  Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau

of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change § 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, § 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern § 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in § 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under § 3582(c)(1)(A).

Indeed, § 1B1.13 does not become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Rather, § 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'" because the standard applies equally to BOP motions

and prisoner motions. *Gunn*, 980 F.3d at 1180. When the Sentencing Commission promulgated § 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A).

Further, 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, § 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of § 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because § 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of the terms in § 3582(c)(1)(A)'s is instructive when considering a prisoner's motion brought under § 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are generally those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. To be clear, the "extraordinary and compelling reasons" contained in the Sentencing Commission's policy statement are neither exhaustive nor binding on the Court. *Shkambi*, 993 F.3d at 392. But, in any event, the Court's analysis of whether Defendant presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided—though not strictly bound—by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

## III.    18 U.S.C. § 3553(a) Factors

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C.

14

§ 3553(a) factors to warrant sentence reduction.  *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

    (5) any pertinent [Sentencing Commission] policy statement . . .

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## ANALYSIS

Defendant requests the Court grant him compassionate release based on changes in federal laws and sentence guidelines, alleging that he would be at the end of his sentence if sentenced under today's laws and guidelines.  Additionally, Defendants argues that the Court should grant his request for compassionate release because of health concerns.  The Government did not responded to any of Defendant's motions.

Defendant met § 3582(c)(1)(A)'s exhaustion requirement.  Furthermore, it is possible Defendant's change in circumstances regarding his medical condition suffice as "extraordinary and compelling reasons."  However, Defendant's assertions nonetheless fail because the § 3553(a) factors do not support a reduction of Defendant's sentence.

**I.    Defendant Has Met § 3582(c)(1)(A)'s Exhaustion Requirement.**

The Court may only consider Defendant's motion for compassionate if he first meets § 3582(c)(1)(A)'s exhaustion requirement.   Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the director of the BOP or by a defendant who has fully exhausted their administrative remedies.   18 U.S.C. § 3582(c)(1)(A).   A defendant fully exhausts his or her administrative remedies when either the warden of the defendant's facility denies his or her request or fails to respond to the request within 30 days, whichever is earlier.[4]  *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable.  *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period.").  If a defendant did not seek relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider his or her motion.

On June 24, 2020, Defendant submitted a request to the warden at Cumberland FCI to grant Defendant compassionate release.  On August 2, 2022, Defendant filed a *Pro Se* Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #153; No. 4:93-cr-47, Dkt. #132).  In this first motion, Defendant argues that his diagnosis of a malignant melanoma, in combination with his other medical diagnoses, his

---

[4] BOP regulations define "warden" as "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

original sentence stacking under 18 U.S.C. § 924(c), and the conditions of his imprisonment, create extraordinary and compelling reasons for the Court to reduce his sentence.  On August 9, 2022, the Court entered an order denying Defendant's *Pro Se* Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #153; No. 4:93-cr-47, Dkt. #132) because he had not exhausted all administrative remedies at that time(No. 4:93-cr-22, Dkt. #154; No. 4:93-cr-47, Dkt. #132).  The warden at Cumberland FCI denied Defendants' request on July 20, 2022 (No. 4:93-cr-22, Dkt. #155-4, Exhibit 4 at p. 1; No. 4:93-cr-47, Dkt. #134, Exhibit 4 at p. 1).  On August 10, 2022, Defendant filed a Supplemental Emergency Motion to *Pro Se* Defendant's 7-19-22 Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022, indicating that the warden had denied his request since his original motion (No. 4:93-cr-22, Dkt. #155; No. 4:93-cr-47, Dkt. #134).  Thus, Defendant has met § 3582(c)(1)(A)'s exhaustion requirement.

## II.    Defendant Has Not Met § 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.

Defendant has three bases for why extraordinary and compelling reasons exists.  First, Defendant argues that his sentence was stacked under § 924(c) and, if sentenced under current laws, Defendant would have served his full sentence within the next year.  Second, Defendant asserts that the difficulties and risks associated with his newly diagnosed malignant melanoma are further compounded by the intricacies of medical care in the prison system.  Third, Defendant asserts that difficulties and risks associated with his malignant melanoma are compounded by his other medical conditions.  Namely, Defendant has suffered from CVA cerebral artery occlusion (commonly called a stroke), esophageal reflux, hypertension, idiopathic peripheral autonomic neuropathy, myoneural disorders, other and unspecified hyperlipidemia, epilepsy/recurrent seizures, basal cell carcinoma of the skin, and chronic obstructive pulmonary disease.  Moreover,

Defendant often requires a wheelchair.  According to Defendant's medical records, these are all considered current medical issues as of July 19, 2022.

### i.    Sentence-Stacking

Defendant argues that the Court should reduce his sentence because current laws and sentencing guidelines would not require Defendant serve as lengthy a sentence.  Defendant received two stacked § 924(c) charges for Hobbs Act robberies.  Defendant was sentenced to sixty months' imprisonment for the first count and 240 months' imprisonment for the second count, to be served consecutively.  A month later, Defendant was sentenced to 235 months' imprisonment for four Hobbs Robbery counts.  Each of Defendant's sentences were to be served consecutively, resulting in a total of 535 months imprisonment, or about forty-five years.  However, the maximum sentence Defendant would receive if sentenced today is thirty years, plus three years supervised release.  Thus, Defendant argues that the disparity between Defendant's sentence under the old laws and guidelines versus Defendant's sentence under the new laws and guidelines constitute extraordinary and compelling reasons.

Under § 924(c), a defendant is subject to enhanced punishment—a consecutive mandatory minimum sentence of 25 years—when he or she uses a firearm in connection with a "crime of violence" as defined in either § 924(c)(3)(A)—known as the elements clause—or § 924(c)(3)(B)—known as the residual clause.  According to § 924(c)(3), a crime of violence is an offense that is a felony and either (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.  18 U.S.C. § 924(c)(3)(A–B).

That said, recent Supreme Court holdings require courts reevaluate what constitutes a

"crime of violence."  In 2019, the Supreme Court held that § 924(c)(3)(B)'s residual clause was unconstitutionally vague.  *United States v. Davis*, 204 L. Ed. 2d 757, 764 (2019).  And, in 2022, the Supreme Court held that a Hobbs Act robbery is no longer considered a "crime of violence" because no element of an attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force, as required by the elements clause.  *United States v. Taylor*, 142 S. Ct. 2015, 2021 (2022).

The Supreme Court is not the only governmental entity that changed how courts evaluate convictions under § 924(c).  In the First Step Act of 2018 Congress amended § 924(c)(1)(C) to clarify that the consecutive mandatory minimum sentence of 25 years only applies when a defendant commits a subsequent § 924(c) violation after a prior § 924(c) conviction becomes final.  See *United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021).  "In other words, the 25-year repeat offender minimum no longer applies where a defendant is charged simultaneously with multiple § 924(c)(1) offenses."  *United States v. Gomez*, 960 F.3d 173, 176–77 (5th Cir. 2020).  "Now, to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution."  *Id.*  Thus, under current laws, § 924(c) would not operate to require Defendant serve his 60 months' and 240 months' imprisonment consecutively.

However, the First Step Act does not apply retroactively to sentences imposed prior to its enactment.  *See* § 403(b), 132 Stat. at 5222; *McCoy*, 981 F.3d at 271.  "Had Congress made the changes retroactively applicable to all, every defendant sentenced to stacked § 924(c) offenses would have been categorically eligible for sentencing relief."  SHON HOPWOOD, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 110 (2019).  Instead, defendants seeking compassionate release who were sentenced under § 924(c), "must establish extraordinary and compelling reasons individually in order to be eligible for relief."  *Id.*

19

Courts that have analyzed whether defendants sentenced under § 924(c) can establish extraordinary and compelling reasons consider (1) the disparity between the length of the original sentence and the new sentence, (2) a defendant's younger age at the time of sentencing, and (3) a defendant's criminal history.  *McCoy*, 981 F.3d at 271 (the court considered the length of the original sentence and the "gross disparity" between the between the original and new sentences, determining that "[defendant] was a teenager with no relevant criminal history at the time of his offenses, making the recidivist penalties of "stacked" sentences particularly inappropriate"); *see also United States v. Zullo*, 976 F.3d 228, 238 (2d Cir. 2020) ("Zullo's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction."); *United States v. Fowler*, No. 4:92-CR-177-Y, 2021 U.S. Dist. LEXIS 80058, at *4 (N.D. Tex. Feb. 24, 2021) ("[T]he Court is mindful of the fact that at the time Fowler's offenses herein were committed, he was only twenty-five years old.").

On March 18, 2022, the Court addressed McLean's sentence-stacking (the "March 18 Order"), taking into account the disparity in sentences, McLean's age at the time of the sentencing and his criminal history (Dkt. #143 at p. 12).  After carefully considering the relevant factors, the Court did not find "extraordinary and compelling reasons" existed to warrant a reduction in McLean's sentence.  For the most part, there has been no change in these factors as they apply to Defendant since the Court last considered them.  In fact, the only change in circumstance is that Defendant's recidivism level is now a medium-risk, rather than high-risk.

Furthermore, the Court reconsidered Defendant's arguments in its June 27, 2022, order (the "June 27 Order") and reached the same conclusion it reached in the March 18 Order (Dkt. #151 at pp. 11–16; No. 4:93-cr-47, Dkt. #130 at pp. 11–16).  Given the depth of the Court's prior analysis, which indicates that the factors weigh heavily against a reduction in sentence, the change in

Defendant's recidivism level is not enough to change the outcome of the Court's previous analysis. Accordingly, the Court adopts the identical sentence-stacking conclusion from its March 18 Order and June 27 Order in its order today.

### ii.    Medical Conditions

Defendant argues that the Court should reduce his sentence because of his recent cancer diagnosis in conjunction with his other medical conditions constitute extraordinary and compelling reasons.   Defendant asserts that the dangers associated with malignant melanoma will be compounded by the intricacies of medical care in the prison system.   Additionally, Defendant asserts that these difficulties and risks are compounded by his other medical conditions.  Namely, Defendant has suffered from CVA cerebral artery occlusion (commonly called a stroke), esophageal reflux, hypertension, idiopathic peripheral autonomic neuropathy, myoneural disorders, other and unspecified hyperlipidemia, epilepsy/recurrent seizures, basal cell carcinoma of the skin, and chronic obstructive pulmonary disease (No. 4:93-cr-22, Dkt. #155-2, Exhibit 2 at p. 13; No. 4:93-cr-47, Dkt. #134-2, Exhibit 2 at p. 13).   Moreover, Defendant often requires a wheelchair (No. 4:93-cr-22, Dkt. #155-2, Exhibit 2 at p. 9; No. 4:93-cr-47, Dkt. #134-2, Exhibit 2 at p. 9).  The medical records provided by Defendant, however, do not fully support Defendant's argument (No. 4:93-cr-22, Dkt. #155 -5 at pp. 4–6, Dkt. #155-2, Exhibit 2; No. 4:93-cr-47, Dkt. #134 at pp. 4–6, Dkt. #155-2, Exhibit 2).

Although it is possible that Defendant's medical conditions may fall within the first category of "extraordinary and compelling reasons" identified within the Sentencing Commission's, without more information the Court cannot make a true determination. Section 1B1.13's application note 1 provides for two circumstances under which a defendant's medical condition may warrant a sentence reduction.   First, if a defendant is suffering from a

terminal illness, meaning he or she has a serious and advanced illness with an end of life trajectory, then that would constitute extraordinary and compelling reasons to reduce a sentence.  U.S.S.G § 1B1.13 cmt. n.1(A)(i).  Second, if a defendant is (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover, then that would constitute extraordinary and compelling reasons to reduce a sentence.  U.S.S.G § 1B1.13 cmt. n.1(A)(ii).  Here, Defendant has not proven either circumstance exists.

Similar to Defendant's sentence-stacking argument, the Court addressed Defendant's medical conditions argument in the March 18 Order and June 27 Order.  In the March 18 Order, the Court determined that Defendant failed to prove his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i)'s framework (No. 4:93-cr-22, Dkt. #143 at pp. 16–17; No. 4:93-cr-47, Dkt. #123 at pp. 16–17).  Likewise, when the Court reconsidered Defendant's argument in the June 27 Order, the Court concluded that:

> McLean's health conditions do not warrant compassionate release. McLean suffers from hypertension, epilepsy, incontinence, constipation, arthritis, basal cell carcinoma, and chronic obstructive pulmonary disease. McLean is not subject to a terminal illness. McLean has been able to provide self-care in prison. He is able to report to Health Services for incontinent undergarments and can change them independently. He has also been provided a wheelchair and crutches. Further, hypertension, diabetes mellitus, hyperlipidemia, coronary artery disease, acid reflux, dizziness, and a bladder tumor are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances.  McLean's age of 62 also does not support compassionate release.

(Dkt. #151 at p. 17; No. 4:93-cr-47, Dkt. #130 at p. 17) (internal citations omitted).  However, some of the circumstances surrounding Defendant's medical conditions have since changed.  BOP medical staff diagnosed Defendant with multiple instances of malignant melanoma, CVA cerebral

artery occlusion (commonly called a stroke), esophageal reflux, idiopathic peripheral autonomic neuropathy, myoneural disorders, and other and unspecified hyperlipidemia.  All of which were not conditions considered in the Court's prior analyses (No. 4:93-cr-22, Dkt. #143 at pp. 15–17; No. 4:93-cr-47, Dkt. #123 at pp. 15–17; No. 4:93-cr-22, Dkt. #151 at pp. 16–18; No. 4:93-cr-47, Dkt. #130 at pp. 16–18).

The thrust of Defendant's medical argument is that he is entitled to compassionate release because he has been diagnosed with malignant melanoma.  According to Defendant, his diagnosis, combined with his other medical conditions and his claims that the BOP has not been properly treating his diagnosis, constitute extraordinary and compelling reasons.  However, it is not clear from the Defendant's medical records whether Defendant is subject to a terminal illness because of the malignant melanoma, and, as the Court has noted, the other medical conditions he continues to suffer from are insufficient to constitute "extraordinary and compelling reasons."  *See Thompson*, 984 F.3d at 434 (affirming lower court's decision that hypertension and diabetes are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances.);  *United States v. Raymer*, No. 4:17-CR-153, 2020 WL 3451855, at *3–4 (E.D. Tex. June 23, 2020) (concluding that a borderline-obese 43-year-old man, suffering from fatty liver disease, bronchitis, and asthma, and who had contracted COVID, did not qualify for early release).

While Defendant did provide the Court with helpful information about the overall impact of a melanoma diagnosis, and some general information about the effect of time between diagnosis and treatment, Defendant did not provide specific information about his own diagnosis.  (No. 4:93-cr-22, Dkt. #155-1, Exhibit 1; No. 4:93-cr-47, Dkt. #134, Exhibit 1).  The Defendant did not provide any medical records indicating the severity of his malignant melanoma diagnosis, or the

possibility of recovery.  A melanoma diagnosis is not sufficient on its own to constitute extraordinary and compelling reasons.  *See United States v. Johnson*, No. 4:12-CR-80, 2020 WL 5258485, at *4 (E.D. Tex. Sept. 2, 2020) (holding that extraordinary and compelling reasons to grant compassionate release did not exist despite cancer diagnosis); *see also United States v. Hileman*, No. 2:19-CR-087, 2021 WL 4619653, at *2 (E.D. Tenn. Oct. 6, 2021) "[T]he Court cannot find that [the defendant's] cancer and obesity, even when considered along with her other purported conditions and the COVID-19 pandemic generally, presently amount to extraordinary and compelling grounds for her release."); *United States v. Shepard*, No. CR 07-85 (RDM), 2021 WL 848720, at *7 (D.D.C. Mar. 4, 2021) (holding that the defendant failed to show extraordinary and compelling reasons when prisoner's record did not demonstrate that his cancer was life threatening or had spread.  The BOP has the resources to treat Defendant's condition, and his medical records indicate that he is receiving treatment (No. 4:93-cr-22, Dkt. #155-2, Exhibit 2 at pp. 2–6; No. 4:93-cr-47, Dkt. #134-2, Exhibit 2 at pp. 2–6).  In fact, Defendant has already  had surgery on the first malignant melanoma that was found (*see generally* No. 4:93-cr-22, Dkt. #169; 4:93-cr-47, Dkt. 147).

Moreover, Defendant did not provide any information or evidence that would indicate his ability to provide self-care within the correctional facility is substantially diminished.  To be sure, nothing in the record indicates that Defendant's ability to care for himself has changed since his last request for a reduction in sentence.  As the Court previously noted, "McLean has been able to provide self-care in prison.  He is able to report to Health Services for incontinent undergarments and can change them independently. He has also been provided a wheelchair and crutches" (No. 4:93-cr-22, Dkt. #143 at pp. 15–16; No. 4:93-cr-47, Dkt. #123 at pp. 15–16).

The Court does not downplay Defendant's health issues or suggest that his concerns are

unreasonable.  However, Defendant fails to prove that his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i) framework, even considering his change in circumstances. *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstance meeting the test for compassionate release").

### III.  Section 3553(a) Does Not Support a Sentence Reduction

Even if Defendant had shown that extraordinary and compelling reasons to reduce his sentence exist, those reasons do not outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction.  As mentioned, in the June 27 Order, the Court granted in part and denied in part a motion to reconsider filed by Defendant (No. 4:93-cr-22, Dkt. #151; No. 4:93-cr-47, Dkt. #130). The Court partially granted the motion so that it could conduct an analysis of the § 3553(a) factors.

In the June 27 Order, the Court determined that the § 3553(a) factors do not support a reduction of Defendant's sentence (No. 4:93-cr-22, Dkt. #151 at p. 20; No. 4:93-cr-47, Dkt. #130 at p. 20).  The Court noted that Defendant's crime was a crime of violence and that reducing Defendant's sentence would "undermine the seriousness of his offences, respect for the law, and just punishment" (No. 4:93-cr-22, Dkt. #151 at p. 19; No. 4:93-cr-47, Dkt. #130 at p. 19). Defendant has a substantial criminal record, both in his adult and juvenile life (No. 4:93-cr-22, Dkt. #151 at p. 19; No. 4:93-cr-47, Dkt. #130 at p. 19).  Additionally, the sentence he received for his most recent criminal convictions were at the lower end of the guideline range (No. 4:93-cr-22, Dkt. #151 at p. 20; No. 4:93-cr-47, Dkt. #130 at p. 20).  Finally, the Court found that Defendant posed a danger to society, had paid no restitution to his victims, and the other defendant in the case received a substantially similar sentence (No. 4:93-cr-22, Dkt. #151 at p. 20; No. 4:93-cr-47, Dkt. #130 at p. 20)

Defendant has presented no proof of a change in circumstances relating to the § 3553(a)

factors since the Court last analyzed them.  Accordingly, the Court adopts its analysis and holding

from the June 27 Order on the § 3553 factors:

> Although the Court agrees that McLean is not currently in the best health, the Court
> also recognizes that considering McLean's history there is reason to doubt
> McLean's claims. After consideration of the factors in 18 U.S.C. § 3553(a) and
> comparing McLean's claims about his medical condition against his medical
> records, a sentence reduction is not warranted.

(No. 4:93-cr-22, Dkt. #151 at p. 20; No. 4:93-cr-47, Dkt. #130 at p. 20).

*     *     *

Under the rule of finality, federal courts may not "modify a term of imprisonment once it

has been imposed" unless one of a few "narrow exceptions" applies.  *Freeman v. United States*,

564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at

819 (same).  Compassionate release is one of those exceptions, but a defendant must conform both

to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence.

Because Defendant has failed to meet the controlling requirements for compassionate release set

forth in § 3582(c)(1)(A)(i), his motion must be denied.[5]

On a final note, the Court acknowledges that in some places throughout Defendant's

filings, Defendant makes claims of retaliation by the BOP against him.  However, beyond a few

conclusory sentences scattered throughout briefing, Defendant does not provide any support or

basis for this claim.  Accordingly, the Court will not conduct any analysis on retaliation as it

pertains to the issues at hand.

## CONCLUSION

It is therefore **ORDERED** that the motions to supplement, reconsider, reduce sentence,

---

[5] In the alternative, the Court is also unable to order home confinement.  The BOP has exclusive authority to determine
where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see
also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either
the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

and follow up are **GRANTED in part**, insofar as they serve to supplement the Defendant's briefing on the issue, and **DENIED in part**, insofar as the motions argue the merits of Defendant's request that the Court reduce his sentence:

(1) Defendant's Supplemental Emergency Motion to *Pro Se* Defendant's 7-19-22 Emergency Motion for Reduction in Sentence Do [sic] to Diagnosis of Malignant Melanoma of 7-18-2022 (No. 4:93-cr-22, Dkt. #155; No. 4:93-cr-47, Dkt. #134) is hereby **GRANTED in part** and **DENIED in part**;

(2) Defendant's Emergency Motion to Reconsider Pursuant to Rule Fed. Civ. P. 59(e) to the Courts [sic] Order in (DOC. #154) (No. 4:93-cr-22, Dkt. #156; No. 4:93-cr-47, Dkt. #135) is hereby **GRANTED in part** and **DENIED in part**;

(3) Emergency Motion to have (DOC. #133) Case No.: 4:93-CR-47-1 and (Doc. #154) Case No.: 4:93-CR-22-1 Reheard by the Court as 30 Days Elapsed from 7-18-2022 With No Response from the Warden As Well As the 8-10-2022 Supplemental Motion Be Heard (No. 4:93-cr-22, Dkt. #158; No. 4:93-cr-47, Dkt. #137) is hereby **GRANTED in part** and **DENIED in part**;

(4) Defendant's Emergency Motion to Inform the Court of Further Delay in Medical Treatment and to Ask for the RIS to be Granted Forthwith (No. 4:93-cr-22, Dkt. #159; No. 4:93-cr-47, Dkt. #138) is hereby **GRANTED in part** and **DENIED in part**;

(5) Defendant's Motion to Expediate R.I.S. Reconsideration Due to Continued Delay in Deadly Melanoma Treatment (No. 4:93-cr-22, Dkt. #161; No. 4:93-cr-47, Dkt. #140) is hereby **GRANTED in part** and **DENIED in part**;

(6) Defendant's Emergency Motion to Rehear the (2) Previous Motions for R.I.S. Due

to Life Threatening Melonoma [sic] Cancer and the B.O.P. Inability to Swiftly Treat my "Known" Medical Needs and 100% Proof of Exhaustion, i.e.: 30 Days No Response (No. 4:93-cr-22, Dkt. #162; No. 4:93-cr-47, Dkt. #141) is hereby **GRANTED in part** and **DENIED in part**;

(7)   Defendant's Emergency Motion to have all Pending Motions Ruled on by this Court Due to "Deadly Malignant Melonoma [sic] Cancer" and Failure to Timely Treat Said Cancer by the U.S.A./B.O.P. (OR) in the Alterative Motion for a Hearing on all Pending Motions Before the Court as the Issues Before the Court are in Fact Life or Death Issues, of the Pro Se Defendant Whom "If" Sentenced Today for the Same Crimes Committed in 1992-93 Could "Not" Receive a Longe [sic] Sentence Then [sic] the 30 Years He has All Ready Server [sic] Flat (No. 4:93-cr-22, Dkt. #163; No. 4:93-cr-47, Dkt. #142) is hereby **GRANTED in part** and **DENIED in part**;

(8)   Defendant's Emergency Follow Up Motion to My 10-3-22 Emergency Motion to Have all Pending Motions Heard, and Reduction in Sentence Granted to Save My Life (No. 4:93-cr-22, Dkt. #164; No. 4:93-cr-47, Dkt. #143) is hereby **GRANTED in part** and **DENIED in part**;

(9)   Defendant's Emergency Status Follow Up Motion to R.I.S. Request i.e. "Emergency Motion…." to Inform the Honorable Judge Amos L. Mazzant IIII by Attached Letter that Once Again the BOP has Dropped the "Medical-Ball" on My Life Saving Cancer Surgury [sic]; After the 10-17-22 Cancellation of My Life Saving Melonoma [sic] Cancer Surgury [sic] Due to a Simple "Missing Signuer [sic]" (No. 4:93-cr-22, Dkt. #166; No. 4:93-cr-47, Dkt. #145) is hereby **GRANTED in part** and **DENIED in part**;

(10) Defendant's Emergency Motion Giving Notice; that Life Saving Deadly Malignant Melonoma [sic] Cancer Surgury [sic] was Cancelled on 10-17-22 by the BOP/USA Due to a "Paper Work Issue" AND Emergency Motion to Heare [sic] all Pending Outstanding Motions Before the Court Related to R.I.S. so that I may Seek Life Saving Surgury [sic]/Medical Treatment on My Owne [sic] to Save My Life (No. 4:93-cr-22, Dkt. #167; No. 4:93-cr-47, Dkt. #146) is hereby **GRANTED in part** and **DENIED in part**.

(11) Defendant's Emergency Motion with a [sic] 8 Page "Affidavid [sic] of Facts" to Support Pending R.I.S. Related Motions as the BOP Continues to be Unable to Treat Me, Even After Surgury [sic], as I Still Have Un-Checked Melomona [sic] Suspected 930 Spots and NO Heart-Cath Test, as well as Sleeping on the Floor and Facing On Going Retaliation by the B.O.P. No. 4:93-cr-22, Dkt. #169; 4:93-cr-47, Dkt. 147) is hereby **GRANTED in part** and **DENIED in part**; and

(12) Defendant's Emergency Motion by Way of (6) Page Letter to Judge Amos L. Mazzant to Inform him I am "Sick" with Infection Due to the BOP Inability to Care and Manage the After Cair [sic] of my Deadly Maligant [sic] Melanoma Sugury [sic] and Plea to Grant my R.I.S. so that I Seak [sic] Life Saving Treatment (No. 4:93-cr-22, Dkt. #170; 4:93-cr-47, Dkt. #150) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Defendant's Motion to Proceed In Forma Pauperis in the Appeal in the 5th Cir. Court of Appeals in Case No. 22-40443 (No. 4:93-cr-22, Dkt. #160; No. 4:93-cr-47, Dkt. #139) is hereby **GRANTED.**

**IT IS SO ORDERED.**

 **SIGNED this 28th day of November, 2022.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE