# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CASE NO. 4:93CR022 |
| v. | § | CASE NO. 4:93CR047 |
| | § | Judge Mazzant |
| WILLIAM SAMUEL MCLEAN, JR. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant William Samuel Mclean, Jr.'s Motion for the Reduction of Sentence under Title 18 USC Section 3582(c)(1)(A) and for the Appointment of Counsel in the Interest of Justice in Light of the November 1, 2023 Changes Made by the U.S.S.C. to U.S.S.G. Section 1B1.13(6) as I have Over 10 Flat Years Completed on My Current Sentence and Could Not Receive the Same Sentence Today as I did When I was Previously Convicted and Sentenced by this Honorable Court ("Compassionate Release Motion") (Dkt. #188), Motion for Leave to Amend (Dkt. #218), Motion for Compassionate Release (No. 4:93-cv-47, Dkt. #168), and Ex Parte Motion for Hearing (Dkt. #219). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds as follows:

1.    Defendant's Motion for Leave to Amend (Dkt. #218) should be **DENIED**;

2.    Defendant's Ex Parte Motion for Hearing (Dkt. #219) should be **DENIED**;

3.    Defendant's Compassionate Release Motion (Dkt. #188) should be **DENIED**; and

4.    Defendant's Motion to Reduce Sentence (4:93-cr-47, Dkt. #168) should be **DENIED.**

## BACKGROUND

On April 15, 1993, a federal grand jury returned a four count Indictment against Defendant William Samuel McLean, Jr. ("Defendant") and codefendant Jonathan Ray Noble (Dkt. #3). On

May 20, 1993, the grand jury returned a six-count Superseding Indictment against both defendants (Dkt. #22). On July 15, 1993, Defendant pleaded guilty to Counts 5 and 6 of the Superseding Indictment, which charged Defendant with two counts of using and carrying a firearm during and in relation to crimes of violence in violation of 18 U.S.C. § 924(c) (Dkt. #36). On October 29, 1993, Defendant was sentenced to sixty months of imprisonment for one of the counts and 240 months for the other count, to be served consecutively for a total of twenty-five years.

On August 19, 1993, in the Northern District of Texas, Defendant pleaded guilty to four counts of interference of commerce by robbery with threats of violence in violation of the Hobbs Act (No. 4:93-cr-47, Dkt. #4). Defendant was sentenced to 235 months of imprisonment, to be served concurrently with each other and consecutively with the sentence imposed by the Eastern District of Texas conviction. Defendant is currently serving his sentence at Butner FMC with an expected release date of May 25, 2031. https://www.bop.gov/inmateloc/ (Register Number: 04259-078).

Between January 2023 and July 2024, Defendant filed eleven motions, requesting relief from the judgment entered by this Court, for the Court to take judicial notice of his receipt of the Court's order appointing the Federal Public Defender, informing the Court of his recent cancer diagnosis and living conditions, requesting rulings on all pending motions, requesting the appointment of new CJA counsel instead of the Federal Public Defender, and requesting a reduction in sentence (*See* Dkt. #207 at p. 3). One of Defendant's motions was entitled Motion to Reduce Sentence – 2023 USSC Amendment Motion to Appoint Counsel (Dkt. #206). The Government did not respond to any of the motions. On July 2, 2024, the Court issued an Order denying all of Defendant's motions (Dkt. #207).

Prior to the Court's July 2 Order, on November 6, 2023, Defendant filed a motion that was styled: Motion for the Reduction of Sentence under Title 18 USC Section 3582(c)(1)(A) and for the Appointment of Counsel in the Interest of Justice in Light of the November 1, 2023 Changes Made by the U.S.S.C. to U.S.S.G. Section 1B1.13(6) as I have Over 10 Flat Years Completed on my Current Sentence and Could Not Receive the Same Sentence Today as I did When I was Previously Convicted and Sentenced by this Honorable Court ("Compassionate Release Motion") (Dkt. #188). While the Court's July 2 Order denied similar motions that Defendant filed, it did not address Defendant's Compassionate Release Motion (*See* Dkt. #207). Defendant appealed on July 22, 2024 (Dkt. #208). On appeal, Defendant argued that the Court erred by (1) converting his Compassionate Release Motion under 18 U.S.C. § 3582(c)(1)(A) to a motion for a sentence reduction under § 3582(c)(2), based on Amendment 821 to the Guidelines, and (2) failing to provide notice that the Court had appointed him counsel (Dkt. #208; Dkt. #217-1). The Fifth Circuit dismissed the appeal in part for lack of jurisdiction and affirmed in part (Dkt. #217-1). Specifically, the Fifth Circuit held that "[b]ecause the district court's omnibus order did not address the Compassionate Release Motion and there is no appealable order regarding the district court's failure to provide notice of the appointment of counsel, [the Fifth Circuit] lack[s] jurisdiction to consider McLean's challenges on appeal" (Dkt. #217-1 at p. 2).

Finally, on March 31, 2025, Defendant filed his Motion for Leave to Amend (Dkt. #218). Through it, he claims that the Court erroneously classified his previously filed compassionate release motions as a motion for a sentence reduction under § 3582(c)(2) (*See* Dkt. #218). He argues that the counsel that the Court appointed at that time should have caught the mistake but did not (*See* Dkt. #218 at p. 4). Thus, he argues that his compassionate release motions were evaluated

3

under the wrong standard and requests that the Court appoint Criminal Justice Act ("CJA") counsel outside of the Federal Public Defender's Office ("FPDO") (Dkt. #218 at p. 6). He urges that counsel is necessary to prepare an amendment to his compassionate release motions (Dkt. #218 at pp. 6–8).

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i)    extraordinary and compelling reasons warrant such a reduction; or

> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. § 3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of

---

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must

---

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 U.S. App. LEXIS 234, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that

a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There

is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and

---

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

---

[4] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-inter national-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was

disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G.

§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.     Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.     Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling

reason justifying sentence reduction under § 3582(c)(1).”). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, “the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'” *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has “regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment.” *Id.* at 358 (citation omitted). In short, “compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a).” *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

14

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

Before turning to Defendant's arguments, the Court must first address Defendant's request for Leave to Amend his Compassionate Release Motion (Dkt. #218). As far as the Court can tell, Defendant's basis for leave to amend is the Fifth Circuit's recent opinion in which it determined that the Court had not yet addressed Defendant's Compassionate Release Motion (Dkt. #188) and, thus, there was no appealable order for the Fifth Circuit to decide (Dkt. #217-1). The Court will deny Defendant's Motion for Leave to Amend (Dkt. #218). However, given that the Motion reiterates the arguments that Defendant already made in his previous motions (Dkt. #188; 4:93-cr-47, Dkt. #168), the Court will refer to the Motion to Amend (Dkt. #218) for purposes of this Order.

---

[8] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

Next, the Court has one more threshold matter to take up before turning to the merits of the instant Motion. On November 6, 2023, Defendant filed the instant Motion, which was styled as a "Motion to Reduce Sentence Under Title 18 USC Section 3582(c)(1)(A) and for the Appointment of Counsel" (Dkt. #188). On November 16, 2023, pursuant to the Criminal Justice Act, the Court appointed attorney Wayne Dickey to represent Defendant (Dkt. #191). The Court Order notes that counsel was appointed to represent Defendant in that motion for sentence reduction and denied without prejudice any *pro se* motions seeking a reduction (Dkt. #191). On February 29, 2024, Dickey withdrew as counsel for Defendant (Dkt. #197). In doing so, he noted the following:

> Counsel has reviewed the record provided to him in connection with the Defendant's case, including the PSR, Judgment, Plea Agreement, as well as other documents obtained during the investigation of the case. Based on counsel's review of the case, there are no non-frivolous motions or arguments that can be made supporting a sentence reduction. As counsel believes a motion for reduction of sentence is not meritorious, and therefore will not file such motion, there is no need for counsel's continued representation.

(Dkt. #197). Due to counsel's representation that there are no non-frivolous motions or arguments that could be made supporting a sentence reduction, the Court never addressed the Motion in its July 2, 2024 omnibus order (*See* Dkt. #207). Indeed, the *pro se* motion had been terminated and appointed counsel found no merit in filing another motion. However, given Defendant's recent request for leave to amend his Compassionate Release Motion (Dkt. #218), and out of an abundance of caution, the Court will, once more, explain the reasons why compassionate release is not warranted.

Defendant moves for compassionate release on four bases. First, he argues that he is serving an unusually long sentence under U.S.S.G. § 1B1.13(b)(6), and that if he were originally sentenced under the new guidelines, he would have already served the entirety of his sentence (Dkt. #218 at

p. 9). Second, he contends that he is "65 years old and in a wheelchair and poses no danger to anyone" (Dkt. #218 at p. 9) (cleaned up). Third, he insists that he has a release plan that would ensure his shelter and medical needs (Dkt. #218 at p. 9). Finally, he claims that he suffers from cancer and requires treatment that the BOP cannot and has not provided (Dkt. #218 at p. 9). According to Defendant, all of these circumstances are sufficiently extraordinary and compelling to justify early release (*See* Dkt. #218). The Court disagrees. Although Defendant has met § 3582(c)(1)(A)'s Exhaustion Requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist that warrant a reduction of his sentence. Defendant's Motion, therefore, must be denied.

## I.    Defendant is not entitled to appointed counsel to assist in preparing his Compassionate Release Motion.

Through the instant Motion, Defendant first moves the Court to appoint CJA counsel to assist Defendant in preparing an amended compassionate release motion (Dkt. #218 at p. 1). However, Defendant is not entitled to appointment of counsel to assist him in preparing his Motion for Compassionate Release. *See, e.g.*, *United States v. Johnson*, No. 9:10-CR-26, 2023 WL 2479595, at *2 (E.D. Tex. Mar. 10, 2023) (citing *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.")); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Thus, the portion of Defendant's Motion that requests appointment of counsel (Dkt. #218) is denied.

## II.    Defendant has met § 3582(c)(1)(A)'s exhaustion requirement.

As a threshold matter, Defendant has exhausted his administrative remedies as required by § 3582(c)(1)(A) (Dkt. #188-2). Indeed, on October 5, 2023, Defendant submitted a request to the

warden at FMC Butner to grant Defendant compassionate release (Dkt. #188-2 at p. 2). The FMC Butner warden denied Defendant's request on October 10, 2023 (Dkt. #188-2 at p. 3). This Motion followed. Thus, Defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement. However, Defendant's motion nevertheless fails because he has not established "extraordinary and compelling" reasons for early release.

## III.    Defendant has not met § 3582(c)(1)(A)'s requirement that "extraordinary and compelling reasons" warrant a sentence reduction.

Defendant's Compassionate Release Motion raises four "extraordinary and compelling reasons" that Defendant contends justify a reduction of his sentence (Dkt. #218 at p. 9). First, Defendant argues that his sentence is unusually long under U.S.S.G. § 1B1.13(b)(6) because his sentence was stacked under 18 U.S.C. § 924(c) and, if he were sentenced under the current guidelines, he would have already served his entire sentence (Dkt. #218 at p. 9). Second, Defendant contends that, because of his age and medical condition, he does not pose a threat to society (Dkt. #218 at p. 9). Third, he avers that his release plan will ensure his shelter and medical needs (Dkt. #218 at p. 9). Fourth and finally, he insists that his cancer diagnosis and lack of adequate care at Butner FMC warrants early release (Dkt. #218 at p. 9). The Court addresses each in turn.

### A.    Unusually Long Sentence

As his first basis for early release, Defendant points the Court to the length of his sentence. Specifically, he argues that he "could not receive the same sentence today if resentenced for the same charges a similarly situated person charged with the same or closely similar charges would receive today due to a change in the law" (Dkt. #188 at p. 2; Dkt. #218 at pp. 6–9). Accordingly, the Court begins by looking to Defendant's sentence.

18

Defendant takes issue with the two stacked § 924(c) charges that he received for Hobbs Act robberies. On October 29, 1993, Defendant was sentenced to sixty months in prison for the first count and 240 months for the second, to be served consecutively (Dkt. #52). One month later, Defendant was sentenced to 235 months in prison for four Hobbs Act robbery counts (Dkt. #188-3). Each of Defendant's sentences were to be served consecutively, for a total of 535 months imprisonment (Dkt. #188-3). Yet Defendant argues that the First Step Act now prohibits the stacking of sentences imposed pursuant to 18 U.S.C. § 924(c) (*See* Dkt. #218). Thus, he urges the Court to release him from this "unusually long sentence." As the Court has already addressed, the abolishment of § 924(c)'s sentence-stacking does not constitute an extraordinary and compelling reason to justify early release (Dkt. #151; Dkt. #207). The Court reiterates its reasoning below (*See* Dkt. #151).

Under the First Step Act of 2018, Congress amended § 924(c)(1)(C) to clarify that the consecutive mandatory minimum sentence of 25 years only applies when a defendant commits a subsequent § 924(c) violation after a prior § 924(c) conviction has become final. *See United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021). "In other words, the 25-year repeat offender minimum no longer applies where a defendant is charged simultaneously with multiple § 924(c)(1) offenses. Now, to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution." *United States v. Gomez*, 960 F.3d 173, 176–77 (5th Cir. 2020).

Here, Defendant was convicted of two counts of using and carrying a firearm during and in relation to crimes of violence, in violation of Section 924(c). The statutory sentence for the first Section 924(c) offense was five years' imprisonment, and the statutory sentence for the second

Section 924(c) offense was twenty years' imprisonment. At the time of his sentencing, Defendant was required to serve his twenty-year term consecutively to his five-year term. Yet under the amended version of § 924(c), the 25-year minimum would not have been triggered. *Gomez*, 960 F.3d at 176–77.

But the First Step Act did not apply the 2018 change to § 924(c) retroactively to sentences imposed prior to its enactment. *See* § 403(b), 132 Stat. at 5222; *McCoy*, 981 F.3d at 271. "Had Congress made the changes retroactively applicable to all, every defendant sentenced to stacked § 924(c) offenses would have been categorically eligible for sentencing relief." SHON HOPWOOD, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 110 (2019). Instead, defendants seeking compassionate release who were sentenced under § 924(c) "must establish extraordinary and compelling reasons individually in order to be eligible for relief." *Id.*

Several district courts have been receptive to Defendant's argument. *United States v. Owen*, No. 97-CR-2546-CAB, 2019 WL 4345910, 2020 U.S. Dist. LEXIS 61460 (S.D. Cal. Mar. 20, 2020) (collecting cases). In evaluating whether the changes to stacking provisions constitute "extraordinary and compelling reasons" warranting early release in an individual defendant's case, courts often consider the length of the original sentence, and the "gross disparity" between the original sentence and the new sentences Congress has deemed appropriate for the same offense. *McCoy*, 981 F.3d at 285–86 (citing *United States v. Redd*, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020)); *see also United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020) (noting thirty-year disparity).

Additionally, courts granting compassionate release based on sentence-stacking changes tend to focus on the defendant's young age at the time of sentencing. *See e.g., id.* at 278

("[Defendant] was a teenager with no relevant criminal history at the time of his offenses, making the recidivist penalties of "stacked" sentences particularly inappropriate."); *United States v. Zullo*, 976 F.3d 228, 238 (2d Cir. 2020) ("Zullo's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction."); *United States v. Fowler*, 544 F.Supp.3d 764, 766 (N.D. Tex. 2021) ("[T]he Court is mindful of the fact that at the time Fowler's offenses herein were committed, he was only twenty-five years old."). Courts tend to disfavor a long sentence imposed at a young age, resulting in a defendant spending the majority of his or her life in prison. *Cf. United States v. Jones*, F. Supp. 3d 969, 979 (N.D. Cal. 2020) ("[B]ecause [Defendant] was only 22 years old when he began serving his sentence, he has spent more than half his life in prison. Under these conditions, [Defendant's] continued incarceration is unjust.").

After analyzing Defendant's age at the time of his sentencing, his criminal history, and the disparity in sentencings, the Court does not find "extraordinary and compelling reasons" exist that warrant a reduction in Defendant's sentence.

First, at the time of his sentencing, Defendant was thirty-three years old (Dkt. #53; No. 4:93-cr-47, Dkt. #32). In other cases where district courts have granted compassionate release, the defendants were no older than twenty-five years old at the time of their respective sentencings. *See McCoy*, 981 F.3d at 278 (teenager); *Fowler*, 544 F.Supp.3d at 766 (25 years old); *Bryant*, 2020 WL 2085471, at *4 (22 and 24 years old); *Zullo*, 976 F.3d at 238 (teenager); *United States v. Scott*, No. 95-202-CCB-2, 2020 WL 2467425, at *4 (D. Md. May 13, 2020) (23 years old). Defendant's age of thirty-three at the time of his sentencing does not support his request.

Second, Defendant's criminal history is also comprised of the Hobbs Act robberies. In the Fifth Circuit, a Hobbs Act robbery qualifies as a crime of violence for purposes of § 924(c). *United States v. Buck*, 847 F.3d 267, 274 (5th Cir. 2017) (holding that it was not erroneous for the district court to classify a Hobbs Act robbery as a crime of violence under § 924(c)). The Hobbs Act defines "robbery" as the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property. 18 U.S.C. § 1951(b)(1).

That said, on June 21, 2022, the Supreme Court held that an attempted Hobbs Act robbery does not qualify as a crime of violence. *United States v. Taylor*, 596 U.S. 845, 845 (2022). The Hobbs Act makes it a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component. § 1951(a). Section 924(c) authorizes enhanced punishments for those who use a firearm in connection with a "crime of violence" as defined in either § 924(c)(3)(A)—known as the elements clause—or § 924(c)(3)(B)—known as the residual clause. According to § 924(c)(3), a crime of violence is an offense that is a felony and either (a) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. § 924(c)(3)(A–B). However, the Supreme Court recently held that § 924(c)(3)(B)'s residual clause was unconstitutionally vague. *United States v. Davis*, 588 U. S. 445, 470 (2019). Then, in *Taylor*, the Supreme Court held that because no element of Attempted Hobbs Act Robbery requires proof that the defendant used, attempted to use, or threatened to use force—as required by the elements clause—it could not qualify as a crime of violence. 596 U.S. at 852.

Notably though, Defendant was not convicted of an attempted Hobbs Act robbery. Rather, Defendant was charged and convicted for two instances of interference of commerce by robbery with threats of violence. Defendant was therefore convicted of a crime that satisfies the elements clause—unlike the defendant in *United States v. Taylor*. Thus, Defendant's criminal history weakens his argument for release.

Finally, and most importantly, the Court considers the length of Defendant's original sentence, and how it compares to current sentencing laws and guidelines. In 1993, the Court sentenced Defendant to 60 months' imprisonment for his first Section 924(c) violation and 240 months' imprisonment for his second 924(c) violation, to be served consecutively. A month later, the Court sentenced Defendant to 235 months' imprisonment for Hobbs Act robberies, to be served consecutively with the sentence previously rendered. Therefore, in total, Defendant was sentenced to 535 consecutive months'—or roughly 45 years'—imprisonment. Under current law, Defendant would be sentenced to a total of 10 years' imprisonment for his two 924(c) violations in 4:93-CR-22(01). Thus, in addition to the 235 months' imprisonment for the Hobbs Act robberies, Defendant's sentence would be for 355 months, or roughly 30 years in prison.

A difference of fifteen years gives the Court pause. However, the Court does not find such a disparity in sentencings rises to the level of "extraordinary and compelling reasons" that would warrant release. Other courts that have granted reduced sentences evaluated cases in which the disparity in the defendant's original sentencing and the one that would be imposed currently was thirty years or more. *See McCoy*, 981 F.3d at 285 ("Today, with sentence-stacking eliminated, each would have been sentenced under § 924(c) not to 45 years, but to 15[.]"); *Redd*, 444 F. Supp. 3d at 723 (finding defendant's sentence, which was a result of stacking, "resulted in a mandatory

minimum sentence of 540 months for his three § 924(c) convictions, to run consecutive to his 63 month sentence for the bank robberies . . . . [T]hat sentence is 30 years, or three times longer, than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct"); *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020) ("Accordingly, if Decator were sentenced today, his three § 924(c) convictions would result in a consecutive sentence of 15 rather than 45 years."); *Bryant*, 2020 WL 2085471, at *3 ("If Bryant were sentenced today, his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years."); *Scott*, 2020 WL 2467425, at *3 ("Accordingly, if Scott were sentenced today, his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years."). Such a gross disparity does not exist in this case. Thus, the length of Defendant's sentence will not serve as a basis to justify early release.

### B.    Defendant's Age

Next, Defendant argues that he "is 65 years old and in a wheelchair and poses no danger to anyone" (Dkt. #218 at p. 9) (cleaned up). To recap, for a defendant's age to constitute extraordinary and compelling reason for release, the defendant must show that he (1) is at least 65 years old; (2) has "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; and (3) is "experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(2). Though Defendant meets two of these three requirements, the Court is not convinced that he has carried his burden to show that extraordinary and compelling reasons exist to justify his release.

First, Defendant turned 65 this year (Dkt. #32 at p. 2). Thus, he meets the first requirement under U.S.S.G. § 1B1.13(b)(2). Second, as of the date of this Order, Defendant has served more

than 32 years of his roughly 45-year sentence. Thus, though he has not served 75 percent of his term of imprisonment, he has served at least 10 years, satisfying U.S.S.G.'s second prong. U.S.S.G. § 1B1.13(b)(2). Third, though Defendant informs the Court that he is in a wheelchair, the Court is not convinced that he has demonstrated a "serious deterioration in physical or mental health." *Id.* While Defendant's Motion to Amend lacks much medical discussion, the exhibits that he attached to his prior Compassionate Release Motion (Dkt. #188) are instructive. The most specific example is Defendant's attached correspondence with Warden Scarantino, in which he informed Defendant that "Medical staff reviewed [his] request for a Reduction in Sentence" and "determined that [Defendant] d[id] not meet the criteria under Terminal, Debilitated or Elderly with Medical Conditions" because he did not have a terminal illness with a life expectancy of less than 18 months and he is independent with his self-care (Dkt. #188-2). Thus, at this stage, the Court is not convinced that he has established a "serious deterioration" in his condition that would qualify him for early release.

### C.    Release Plan

As his third basis for early release, Defendant argues that he has a release plan that would ensure his medical needs (Dkt. #218 at p. 9). Yet Defendant's Motion lacks any discussion about what that plan may be (*See* Dkt. #218). Indeed, even the documents that Defendant attached in support of his Motion suggest that, in response to previous requests for early release, he did not have a viable release plan (Dkt. #218 at p. 23) (explaining that Defendant's "requests were denied because Defendant did not have a viable release plan"). Without more, the Court must view this factor as weighing against early release.

### D.    Defendant's Medical Condition

Finally, Defendant submits that he qualifies for early release because he "suffers from [c]ancer and would benefit from treatment the BOP could not and is not providing" (Dkt. #218 at p. 9). Thus, he argues that the BOP's inability to provide adequate treatment and the availability of clinical trials outside his facility constitute extraordinary and compelling reasons to justify his release (Dkt. #218 at p. 8). The Court has already addressed Defendant's health-related arguments at length in multiple prior Orders (No. 4:93-cr-47, Dkt. #152; No. 4:93-cr-47, Dkt. #130 at p. 17; Dkt. #151 at p. 17; *see* Dkt. #218). And in the Court's view, Defendant has presented no new arguments on these points, either in his previous Motions for Compassionate Release (Dkt. #188; No. 4:93-cr-47, Dkt. #168) or in the instant Motion (Dkt. #218). Accordingly, in line with the Court's previous determinations, the Court concludes that Defendant's current medical conditions do not amount to extraordinary and compelling reasons to release him. *See United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (noting that "the defendant has the burden to show circumstances meeting the test for compassionate release").

### IV.    The § 3553(a) factors do not support a sentence reduction.

Yet even if Defendant had met the § 3582(a)(1)(A) factors, the § 3553(a) factors do not support a reduction in Defendant's sentence.

The Court begins with the nature and circumstances of the offense and history and characteristics of the Defendant. Here, Defendant was convicted of four counts of Hobbs Act Robbery and two counts of carrying a firearm during and in relation to crimes of violence.

Next, the Court considers the need for the sentence to be imposed to reflect the seriousness of the offense; promote respect for the law and punishment for the offense; to afford adequate deterrence; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Here, the Court finds that reducing Defendant's sentence would undermine the seriousness of his offenses, respect for the law, and just punishment. His sentence was necessary to provide adequate deterrence as well as protection of the public. After Defendant was released from prison in 1992—after serving his sentence for a robbery he committed in 1987—Defendant was involved in numerous car thefts and robberies of supermarkets in various areas of the country. From the detailed criminal history in his PSRs, it appears Defendant has been in near constant contact with the criminal justice system throughout most of his adult life, and even as a juvenile (Dkt. #53; No. 4:93-cr-47, Dkt. #32). This factor weighs against a sentence reduction.

Third, the Court looks to the kinds of sentences available to the Court. Defendant has served more than 32 years of his 45-year sentence. This means that there is no type of sentence available to Defendant other than a sentence reduction. Considering his offense conduct, this factor similarly weighs against any reduction.

Fourth, the Court considers the kinds of sentence and range established for the applicable category of offense and the Defendant. For the two instances of using and carrying a firearm during and in relation to crimes of violence, the PSR did not calculate a total offense level, but the recommended sentence was for twenty-five years (Dkt. #53). For the four instances of interference of commerce by robbery or threats of violence, the PSR calculated a total offense level of 33 (No.

4:93-cr-47, Dkt. #32). The guideline range was 235-293 months. The fact that Defendant's range was higher than his actual sentence demonstrates that this factor also weighs against a sentence reduction.

Fifth, the Court considers any pertinent policy statement. In addition to the Court's finding that Defendant's medical conditions do not qualify as extraordinary and compelling reasons, the Court also finds that the Defendant would pose a danger to society. Therefore, Defendant fails to fully meet all requirements of the policy statement.

Sixth, the Court must consider the need to avoid unwarranted sentence disparities among defendants. Defendant's sentence is below the guideline range for his offense level and criminal history. Further, the only other defendant in this case received a substantially similar sentence to Defendant's.

Seventh and finally, the Court considered the need to provide restitution to any victims of the offense. Here, Defendant was never ordered to pay restitution. Thus, this factor does not weigh against reduction.

Although the Court agrees that Defendant is suffering from health issues, the Court also recognizes that, considering Defendant's history, there is reason to doubt Defendant's claims. After considering the factors in 18 U.S.C. § 3553(a) and comparing Defendant's claims about his medical condition against his medical records, a sentence reduction is not warranted.

In sum, under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must

conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because McLean has failed to meet the controlling requirements for compassionate release set forth in § 3583(c)(1)(A)(i), his Motions must be denied.

**CONCLUSION**

The Court therefore **ORDERS** as follows:

1.    Defendant's Motion for Leave to Amend (Dkt. #218) is hereby **DENIED**;

2.    Defendant's Ex Parte Motion for Hearing (Dkt. #219) is hereby **DENIED**;

3.    Defendant's Compassionate Release Motion (Dkt. #188) is hereby **DENIED**; and

4.    Defendant's Motion to Reduce Sentence (4:93-cr-47, Dkt. #168) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 23rd day of May, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE